# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRISON S. JOHNSON, | CASE NO. 1:08-CV-00640-LJO-DLB PC |
| Plaintiff, | ORDER GRANTING CDCR'S MOTION FOR PROTECTIVE ORDER IN PART |
| v. | (DOC. 147) |
| JOHN DOVEY, et al., | PROTECTIVE ORDER |
| Defendants. | |
| _____/ | |

I.    **Background**

Plaintiff Garrison S. Johnson ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding against Defendants Dunnahoe, V. Ybarra, Cunningham, Medrano, Holguin, Valasquez, G. Ybarra, Curliss, J. Gonzales, and K. Powell on claims of excessive force, inhumane conditions of confinement, retaliation, and state law claims.

On March 9, 2011, the Court directed the United States Marshal to serve subpoenas duces tecum on CDCR and Matthew Stainer, acting warden of California Correctional Institution, where the events giving rise to this action occurred.  CDCR and Mr. Stainer were to respond to the subpoenas.  Doc. 118.  On May 26, 2011, Plaintiff filed a motion for contempt citation, sanction, and other relief against non-parties Matthew Cate and Michael Stainer with regards to a subpoena duces tecum.  Doc. 130.  On November 7, 2011, the Court granted Plaintiff's motion, construing it as a motion to compel.  Doc. 146.  Non-party CDCR was granted an opportunity to

1  move for a protective order.

2          On November 17, 2011, CDCR filed a motion for protective order, which is currently

3  pending before the Court.  Doc. 147.  On December 1, 2011, Plaintiff filed a response, construed

4  as an opposition.  Doc. 148.  The matter is submitted pursuant to Local Rule 230(l).

5  **II.      CDCR's Proposed Protective Order**

6          CDCR contends that several of the requests in the subpoena duces tecum should not be

7  disclosed.  Plaintiff opposes several of CDCR's requests.

8  <u>Document A1:</u>            "Production of all logs, documents, and electronically stored information
                               in the Warden's possession and control relating to the dates and time
9                              Plaintiff was provided showers from March 17, 2007 through March 30,
                               2007."
10

11          CDCR contends that Plaintiff already has access to responsive documents in his central

12  file.  CDCR Mot. 4-5.  Plaintiff contends that no such documents exist in his central file, and

13  submits a declaration attesting to it.  Pl.'s Opp'n, Pl.'s Decl. ¶¶ 1-5.  Accordingly, CDCR's

14  objection to production of a responsive document here is denied.

15  <u>Document A2:</u>            "Production of all CDCR policies, rules, regulations, documents, and
                               electronically stored information in the Warden's possession and control
16                             that requires documenting whether the inmate showered or refused to
                               shower."
17

18          CDCR contends that the production of this document would disclose confidential

19  material to the inmate population regarding restricted CDCR institutional procedures and

20  regulations, such as escorts, and institutional security would be compromised.  CDCR Mot. 4.

21  Plaintiff contends that he has no documentation in his central file disclosing whether he did or

22  did not shower.  It appears that Plaintiff's request for production concerns documentation of

23  when he was offered the opportunity to shower, as it is his contention that he was not offered a

24  shower for decontamination after being pepper sprayed.  *See* February 15, 2011 Order 1-2, Doc.

25  115.  It is Plaintiff's contention that prison officials keep a log of whether a prisoner showered or

26  refused to shower.  CDCR will not be required to produce documents regarding escorts or other

27  information that would affect institutional security, only procedures or regulations regarding

28  whether showers or refusal to shower are documented.  CDCR has not presented sufficient

1   arguments that such limited production would jeopardize institutional security.  CDCR may thus

2   redact portions of the documents that implicate institutional security concerns, so long as it

3   produces the procedure or regulation which states whether an inmate showers or refuses to

4   shower is documented.  Accordingly, CDCR's objection to production of a responsive document

5   here is denied.

6   Document A3:          "Any and all logs, documents, and electronically stored information in
                          your possession and control that relates to all cell searches at CCI that
7                         reveal the dates Plaintiff's cell was searched when he was housed at
                          Facility IVA Housing Unit 4 from January 1, 2006 through March 17,
8                         2007."

9          CDCR contends that there would be an undue burden in attempting to locate responsive

10  items.  CDCR Mot. 5.  CDCR contends that such information is typically retained at the prison

11  for a maximum of three years, at which point it is shipped to main storage facilities, containing

12  sixteen hundred square feet over five facilities.  *Id.*  CDCR contends that cutbacks in personnel

13  would make responding to this request time-consuming and burdensome.  *Id.*  Plaintiff does not

14  address CDCR's arguments.

15         Based on CDCR's contentions, the Court finds that the request would be unduly

16  burdensome.  Accordingly, CDCR will not be required to produce a responsive document to this

17  request.

18  Document A4:          "Any and all logs, documents and electronically stored information in your
                          possession and control that reveals Defendant Dunnahoe was assigned in
19                        CCI to search Plaintiff's cell on March 11, 2007 at Facility IVA, Housing
                          Unit 4, Cell #111."
20

21         CDCR contends that Defendant Dunnahoe has already responded to this request when he

22  responded to Plaintiff's interrogatories.  CDCR Mot. 5.  Plaintiff contends that Defendant

23  Dunnahoe did not produce any documents.  Pl.'s Opp'n 2.  CDCR appears to be contending that

24  Defendant Dunnahoe's responses to Plaintiff's interrogatories responded to this request.

25  However, neither CDCR nor Plaintiff has submitted what Defendant Dunnahoe's response was.

26  It is Plaintiff's contention that Defendant Dunnahoe was involved in searching Plaintiff's cell on

27  March 11, 2007.  If Defendant Dunnahoe responded to a similar interrogatory by stating that he

28  was assigned to California Correctional Institution ("CCI") to search Plaintiff's cell on March 11,

3

1    2007, and did search Plaintiff's cell, then Document A4 is moot.  If he has not, then CDCR will

2    be required to produce the responsive document.

3    Document A5:        "Any and all logs, documents, and electronically stored information in
                         your possession and control that pertains to Facility IVA being placed on
4                        emergency lockdown and/or modified program in CCI on March 17,
                         2007."
5

6        CDCR contends that disclosure of any documents would be of a highly confidential

7    nature and pose an institutional security risk .  CDCR Mot. 4.  CDCR contends that the report

8    details events containing the surrounded attempted murder of a correctional officer.  *Id.*  Plaintiff

9    contends that the report would demonstrate that CCI was on a lockdown on March 17, 2007.

10   Pl.'s Opp'n 2.

11       CDCR is not being required to produce highly confidential details regarding the

12   investigation.  Plaintiff requests only a document which indicates that CCI was actually put on

13   lockdown on March 17, 2007.   CDCR may thus redact portions of the documents that implicate

14   institutional security concerns, so long as it produces portions of the relevant documents

15   responsive to Plaintiff's request.  Accordingly, CDCR's objection to production of a responsive

16   document here is denied.

17   Document A6:        Any and all logs, documents, and electronically stored information in your
                         possession and control that relate to two female correctional officers who
18                       were assigned to Facility IVA Housing Unit 4 in CCI who filed complaints
                         between January 1, 2006 through February 28, 2007 requesting to be
19                       reassigned to another position because the Facility IV second watch
                         correctional officers were harassing black inmates and/or causing
20                       problems with black inmates.

21       CDCR contends that too little information was provided for the CDCR to respond, as it is

22   unclear who these female correctional officers are, and to whom the documents pertain.  CDCR

23   also contends that a reasonably inquiry was conducted based on the request, but no such

24   documents were found.  Plaintiff contends that enough information has been provided.

25       The Court finds CDCR's objection reasonable.  It is unclear who these female

26   correctional officers are, and Plaintiff's information is not specific enough to provide sufficient

27   guidance for CDCR to do any further inquiry.  Accordingly, CDCR's objection to production of a

28   responsive document here is granted.

4

Document B6:    A certified copy of any and all complaints filed with the California Office of the Inspector General for the period of 2002-2007 by inmates or on behalf of inmates who were confined at CCI involving Defendants J. Dunnahoe, V. Ybarra, G. Ybarra, S. Cunningham, J. Gonzales, B. Medrano, A. Holguin, and J. Velasquez accusing them of subjecting inmates to the use of excessive force and/or beating and pepper spraying inmates.

Document B7:    "A certified copy of any and all documents and electronically stored information of investigative and findings reports by the California Inspector General's Office relating to complaints filed by inmates in CCI involving Defendants J. Dunnahoe, V. Ybarra, G. Ybarra, S. Cunningham, J. Gonzales, B. Medrano, A. Holguin, and J. Velasquez accusing them of subjecting inmates to the use of excessive force and/or beating and pepper spraying them as well as being placed in administrative segregation on false charges of battery on a peace officer for the period of 2002-2007."

CDCR contends that the California Department of the Inspector General is tasked with independent oversight of departments such as CDCR, and thus CDCR does not have possession of these responsive documents. CDCR Mot. 5. Plaintiff contends that CDCR can subpoena these documents. Pl.'s Opp'n 2.

Though it is possible that CDCR may subpoena these documents, the scope of Plaintiff's subpoena duces tecum was for the production of documents in CDCR's possession, custody, or control. While procedures, regulations, and documents generated by CDCR would be in CDCR's possession, custody, or control, complaints filed with the Inspector General and the Inspector General's findings are not typically in the possession of CDCR. If CDCR does not have a copy of such responsive documents, the Court will not require CDCR to subpoena such documents from the Inspector General. Accordingly, CDCR's objection to production of a responsive document as to B6 and B7 is granted.

**III.    Protective Order**

The Court issues the following protective order.

1. This Order Governing Confidential Information (the "Protective Order") shall govern the designation and handling, by any person, of the information contained in the confidential documents ("Confidential Information") Plaintiff Garrison S. Johnson ("Plaintiff") obtained pursuant to the "Order Directing Service of Subpoena Duces Tecum," dated March 9, 2011, Docket No. 118, as modified by this order.

2.  The word "document" as used herein shall be construed to mean any document, tangible thing or writing as defined by Federal Rule of Civil Procedure 34(a) and Federal Rule of Evidence 1001(1).

3.  The word "person" as used herein shall include any individual, entity, natural person, or any business, legal or governmental entity or association. "Producing Person" refers to any person that produces Confidential Information. "Receiving Person" refers to any person that receives Confidential Information subject to this Protective Order.

4.  Confidential Information shall be subject to the following restrictions:

    a.    Confidential Information shall be used solely for the purpose of preparing for, and conducting, the prosecution or defense of this Action, including any appeals thereof, and shall not be used by the parties or any other person for any other purpose.

    b.    Confidential Information shall not be given, shown, made available or communicated in any way to anyone except those persons specified in subparagraph (c) below to whom it is necessary that such Confidential Information be given or shown for the purposes permitted under subparagraph (a) above.

    c.    Confidential Information may be disclosed, for the purposes set forth in subparagraph (a) above, only to a "Qualified Person," as defined as follows:

        i.    counsel of record for the parties, and attorneys, paralegal, clerical and other staff employed by such counsel who are assisting in the conduct of this Action;

        ii.    parties to this Action;

        iii.    witnesses at any deposition or hearing in this Action;

        iv.    such consultants, experts, and investigators (including their professional staff) retained by the parties, or their respective counsel, as they in good faith deem necessary to provide assistance

in connection with the conduct of this Action;

  v. the Court, court personnel, and jurors, potential jurors or alternate jurors;

  vi. court reporters and videographers used in connection with the conduct of this Action;

  vii. outside photocopying, graphic production services, litigation support services, and document hosting vendors retained by the parties, or their respective counsel, as they in good faith deem necessary to provide assistance in connection with the conduct of this Action;

  viii. persons who are or were authors or recipients of the Confidential Information; and

  ix. any person carrying on an insurance business that may be liable to satisfy part or all of any judgment which may be entered in this Action or to indemnify or reimburse for payments made to satisfy a judgment.

5. Each person described in subparagraph 8(c) to whom Confidential Information is disclosed shall first be advised that such Confidential Information is being disclosed pursuant and subject to the terms of this Protective Order and that Confidential Information may not be disclosed other than pursuant to the terms hereof.

6. If any Receiving Person inadvertently discloses Confidential Information to persons who are not Qualified Persons, such disclosure shall be reported in writing to the Producing Person who produced such inadvertently disclosed Confidential Information. In that event, counsel for the Receiving Person shall make all reasonable efforts to retrieve the Confidential Information and obtain the agreement of persons to whom inadvertent disclosure was made to treat the Confidential Information in accordance with the terms of this Protective Order.

7. In the event that any person discloses Confidential Information in any pleading, court filing, attachment or exhibit thereto, or other papers filed with the Court pre-trial, the disclosing

7

person shall conditionally file the confidential information under seal with the Clerk of this Court
pursuant to Local Rule 141; provided, however, that the paper shall be furnished to the Court and
the attorneys for the parties and a duplicate copy with the confidential information deleted will be
placed in the public record insofar as possible. This Protective Order shall constitute prior
approval by the Court of all such filings made under seal. The parties understand that any
submission of documents under seal should seek to file under seal only those portions of the
documents that contain Confidential Information, and should be made to the judicial officer
presiding over the proceedings in question.

8.  The approval of this Protective Order shall not prejudice the right of a party to seek, at
any time, a determination by the Court of whether any particular document or information should
be subject to the terms of this Protective Order.

9.  Absent consent from a Producing Person, no Confidential Information produced by
such Producing Person may be used in connection with any other litigation, matter, or proceeding
except for *Garrison S. Johnson v. John Dovey, et al.*, United State District Court, Eastern District
of California, Case No.1:08-CV-00640-LJO-DLB.

10. Plaintiff shall only view documents and/or other material produced by CDCR, a third
party non-party in this matter, under supervision of a CDCR official, in a secure location at
Plaintiff's current prison of incarceration, to be determined by authorities at that prison.  Plaintiff
shall not make copies, reproduce of any way or remove from this designated viewing area any
document or material produced by CDCR in response to the subpoena duce tecum issued by the
Court on March 9, 2011.

11.  This Protective Order shall be without prejudice to the rights of a Producing Person
to seek further limits on disclosure or protections for the confidentiality of any discovery material
(whether or not Confidential Information) in addition to the limits and protection provided
herein, to contest such application.

12.  Other parties to this Action, including any additional parties that join or are joined in
this Action, may have access to Confidential Information only by additional order of the Court or
by the party's executing and filing with the Court a stipulation agreeing to be fully bound by this

8

1  Protective Order.

2      13.  Within thirty (30) days after the final termination of this Action, whether through

3  settlement, trial, appeal, collateral review, or other final dispositions, all Confidential

4  Information, and all copies, shall be destroyed or returned to CDCR. If said documents, or copies

5  thereof, are destroyed, notification of their destruction shall be given to CDCR.

6      14.  Any violation of this Protective Order may be punishable as Contempt of Court.

7      15.  Nothing in this Stipulation and Protective Order is intended to prevent officials or

8  employees of CDCR from having access to and use of materials to which they would have access

9  in the normal course of their official duties.

10      16.  In addition to the restrictions outlined above, no materials containing the name,

11  address, or other identifying information, such as date of birth, Social Security Number

12  (collectively, "Identifying Information") about any person, including without limitation any

13  CDCR employee, shall be shown to or provided to Plaintiff or any other inmate, without further

14  order of the Court.

15      IT IS SO ORDERED.

16  **Dated:   December 12, 2011**              **/s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28